CASE 96—PETITION ORDINARY—APRIL 29.

# Farmer v. Gregory & Stagg.

APPEAL FROM FRANKLIN CIRCUIT COURT.

1. Error not considered unless assigned in grounds for new trial.

2. Authority to a warehouseman to sell whisky carries with it the right to issue warehouse receipt, which passes the property to the purchaser, regardless of the surrender of the prior receipt.

3. Section 7 of warehouse act of 1869, forbidding issuing of second receipt without written consent of holder of prior receipt, &c., is in the inter-- est of commerce, to protect the holder of the second receipt, and to prevent fraud, and will not allow the holder of first receipt to *ignore* his oral authority to sell. He is estopped to deny such authority.

4. A writing evidencing the whole of an agreement between the parties,. which has been delivered, accepted, and business transacted under it, although not signed, has the same force and effect as if it had been. signed by the parties.

5. Such a contract cannot be altered, added to, or varied any more than other written contracts that contain the entire agreement of the parties.

6. It was error to permit appellee Stagg to state to the jury either his. understanding of what the writing meant, or that it did not contain all of the terms of the contract, there being no allegations of fraud or mistake.

7. Evidence is admissible in order to identify the subject-matter of the· contract, but not to alter it or change its meaning.

J. & J. W. RODMAN FOR APPELLANT.

1. The object of the act of 1869 in regard to warehousemen is to prevent· frauds and protect innocent purchasers. (See 13 Bush,·page 509.)

2. The court erred in permitting appellee Stagg to construe the written contract or to give his understanding of what it meant.

3. The written agreement between the parties authorized Taylor to sell the whisky in controversy to Farmer.

4. Authority to sell the whisky carries with it authority to deliver the whisky or its equivalent, a receipt.

5. The effect of the instructions was equivalent to sustaining a demurrer to the petition and amended petition; to a refusal of the court to· construe the writing; to refuse to permit the jury to construe it; and. to allow Stagg to construe it.

Farmer v. Gregory & Stagg.

W. P. D. BUSH AND D. W. LINDSEY FOR APPELLEES.

1. Under the warehouse act of 1869 Taylor was not authorized to sell the whisky without the production of the prior receipt and the written consent of Gregory & Stagg. (Acts of 1869, page 56.)

2. The 1st, 2d, 3d, 8th, and 9th assignment of errors are not embraced in the grounds for a new trial, and bill of exceptions does not show what witness would have stated, consequently are not available here. (9 Bush, 670; 3 Mct., 313; 10 Bush, 298; 11 Bush, 575; 14 B. Mon., 64.)

3. The special verdict is not questioned, and sustains the judgment of the court below.

4. Farmer based his action upon the ground that Taylor had the written consent of appellees to sell, and this was the issue made by the pleadings.

5. The instructions given for appellees were more favorable to Farmer than those he asked for.

6. The memorandum or writing sued on was not competent evidence. (Smith v. Miller, 2 Bibb, 616; 13 Bush, 505, 507, 495)

JUDGE HINES DELIVERED THE OPINION OF THE COURT.

Many of the assignments of error will not be considered, because not presented to the court below in the grounds tendered on the motion for a new trial. It is only necessary to consider the instructions given, with an incidental reference to the ruling of the court upon the rejection and admission of evidence.

Instruction number five, given by the court below, requires, as a condition precedent to the liability of Gregory & Stagg, first, that the jury shall find that Gregory & Stagg authorized Taylor to sell the whisky, and second, that Gregory & Stagg authorized Taylor to issue a warehouse receipt therefor. It was error in the court to make the right of recovery depend upon the establishment of both these facts, when proof of the authority to sell carries with it, as an incident, the right to issue the warehouse receipt. The property in the whisky, where the sale is made with the consent and by authority of the holder of the first receipt,

passes to the purchaser, regardless of the fact of the issuing or surrender of receipts.

Section seven of the warehouse act of 1869 does not apply to a case like this. That portion of the section forbidding the issuing of a second receipt without the production of the prior receipt, accompanied by the written consent of the holder of the prior receipt, is in the interest of commerce, and of the negotiability of such receipts, and for the protection of the holder of the second receipt. It is for the prevention of fraud, and not to encourage it, as would be the case if the holder of the first receipt were permitted to repudiate the oral authority given to the original owner of the property, by which he obtains the money of an innocent purchaser for value who has been misled by the silence of the first receipt-holder, who permits the original owner to retain possession with every indicia of ownership. The holder of the first receipt, who gives the oral authority to sell, is as much estopped to deny the authority to sell and the title in the innocent purchaser, as he would be if he had stood by in person and acquiesced in the sale without asserting claim. Any other construction would sanction and encourage combinations for the perpetration of frauds that would effectually defeat the beneficial purposes designed to be accomplished by the passage of the warehouse act.

Taylor issued to appellees, Gregory & Stagg, a warehouse receipt for a certain number of barrels of whisky. Appellant, having no notice of the outstanding receipt to appellees, purchased the same whisky of Taylor, and received from him a warehouse receipt therefor. In an action by appellant to recover the possession of the whisky, he sets up a written agreement between Taylor and Gregory & Stagg, not signed

by them, and executed prior to the purchase by appellant, which is as follows:

"We make advances in money, or accept drafts for a commission of 2½ per cent.; this to cover two renewals of four mons. paper, making the commission 2½ per cent. per annum. The paper we take we discount at 10 per cent. per annum. When you can do better at home we will accept your drafts. The amount per gals. or bbls. for purposes of collateral, to be agreed upon. Free goods we usually do not go beyond ¾ the cash value; we to have one dollar per bbl. on sales in bond of all goods advanced on, whether we sell or you make sale, and 2½ per cent. on all tax-paid goods advanced on, sold by us or you. When required to guarantee sales, we charge 2½ per cent. coms. on amounts so guaranteed. When sale is made of goods advanced on by us, and you do not require the guarantee, other goods can be placed in our hands, as collateral in their stead. We can carry on the above terms all you want carried, and as long as it will pay you to carry."

The answer of Gregory & Stagg admits that the agreement was entered into, but insists that it did not authorize Taylor to sell and convey title to the whisky covered by their receipt. The evidence shows that transactions under this agreement between Taylor and Gregory & Stagg were had to the amount of at least one hundred and fifty thousand dollars, but there was in the meantime only one sale by Taylor of whisky for which Gregory & Stagg held receipt. This last mentioned sale by Taylor was sanctioned by Gregory & Stagg, accompanied with the suggestion that they preferred that, in the future, their approbation should be obtained by Taylor before making sale of whisky for which

they held receipts. This transaction was prior to the sale by Taylor to appellant, but unknown to him.

This written evidence of the agreement between Taylor and Gregory & Stagg is entitled to as much consideration as if they had each signed it. The object of reducing the terms of a contract to writing is to make them certain, and the object of the signature is to identify the writing and to make manifest the fact of deliberation accompanying the consummation of the contract. These objects may be accomplished, as in this instance, by reducing the terms to writing, by delivery, acceptance, and the conduct of business under the agreement, as effectually as if the signatures of the parties were appended. The terms of a contract thus executed must be taken to speak the solemn agreement of the parties, and can no more be altered, added to, or varied than any other written contract which purports on its face to contain the whole of the agreement between the parties. If parol evidence were permitted, in the absence of an allegation of fraud or mistake, to effect it, the same evidence would be competent as bearing upon the same writing when signed by the parties entering into the agreement. If the writing appeared upon its face to be a loose or incomplete memorandum of an agreement, parol evidence would be competent, without alleging fraud or mistake, to show what the contract in fact was; but it is not such a memorandum, and the effect of the oral evidence admitted is to show that the terms used by the contracting parties did not express their meaning. It is true that Stagg testifies that the writing does not contain the whole of the agreement, and that it was not understood to authorize Taylor to sell whisky for which Gregory & Stagg held warehouse receipts; but the same might be said of every deliberately written contract,

and the conservative rule excluding parol evidence thereby effectually nullified.

The expression in the writing exhibited, "we to have one dollar per bbl. on sales in bond of all goods advanced on, whether we sell or you make the sale, and 2½ per cent. on all tax-paid goods advanced on, sold by us or you," taken in connection with the whole tenor of the instrument, manifestly makes it a dispositive document, which was intended to confer upon Taylor the authority to sell whisky upon which advances have been made by Gregory & Stagg. As to the simple question of the authority to sell, the language is unequivocal and without ambiguity, and cannot therefore be contradicted, added to, or varied, without allegation and proof of mistake or fraud. The authority to sell being without limitation or condition, to permit parol evidence to establish that the sales were to be made upon condition that the permission of Gregory & Stagg should be first obtained, would be to make a new contract between Taylor and Gregory & Stagg, and consequently to annul the written agreement. All the circumstances surrounding the contracting parties at the time of making the contract evidenced by the writing, as well as the manner in which they transacted business under the agreement, prior to the purchase by appellant, may be shown to determine whether there was other whisky in the hands of Taylor belonging to Gregory & Stagg, and for which they held no warehouse receipts, and to which, therefore, the authority to sell may have been intended to extend instead of to such as, under their agreement, was to be covered by the warehouse receipts. Such evidence would be competent for the purpose of identifying the subject-matter of the contract, but not for the purpose of showing that the parties did not mean what the language of their

agreement naturally imports. (Greenleaf, vol. 1, secs. 281, 282; Wharton on Evidence, secs. 920, 921, 922, and 923; Castleman v. Southern Mutual Life Insurance Company, 14 Bush, 197.)

For the reasons suggested, we conclude that the court erred in instructing the jury as to the law of the case, and in admitting Stagg to testify as to his understanding of the meaning of the terms used in the written instrument, and also in permitting him to state, in the present condition of the pleadings, that the writing did not contain all the terms of the contract entered into between Taylor and Gregory & Stagg at the time the writing was made.

Judgment reversed, and cause remanded, with directions for further proceeding.