KIDD, administrator, *et al. v.* HUFF, executor.

1. While what purports to be a consent verdict and decree may fail to operate as a judgment binding upon the parties, on account of want of jurisdiction in the court or other valid reason, still, if the terms of the same were, upon sufficient consideration, agreed to by the parties with a full knowledge of its contents, or if it was carried into effect and a fund thus arising was distributed among the parties, who received their shares being cognizant of all the facts, the same might be pleaded in bar of the rights of the parties assenting to or ratifying the agreement contained therein.

(a) Whether on appeal in the superior court from the judgment of the court of ordinary, on an issue of devisavit vel non, the pleadings can be amended and a decree rendered declaring an intestacy and providing for a complete administration of the estate, is a question not made in the present record. What purported to be a verdict and decree, which was the subject-matter of defendant's plea in the present case, was not set up as a judgment conclusive upon the parties but only as an agreement which had been assented to by them.

2. A written instrument, although not signed, will, if orally assented to by the parties, constitute the agreement. Such instrument, however, will not be admissible in evidence until it is shown prima facie that the terms were assented to. It therefore follows that a writing purporting to be a verdict and decree, pleaded only as an agreement between the parties, which was signed by no one other than a person signing as foreman of a jury and another signing as presiding judge, was not admissible in evidence until it was shown prima facie that the parties sought to be bound thereby assented to its terms.

3. In a suit by legatees against the executor of a will for an accounting and payment of their legacies, where what purports to be a verdict and decree, declaring an intestacy and providing for an administration of the estate and the payment of a large amount to the executor as a claim superior to the claims of plaintiffs, is pleaded as an agreement by which the plaintiffs had surrendered their claims as legatees, and the claim of the executor in such paper is attacked as fraudulent, evidence showing that the executor was appointed trustee of the testator during his lifetime, and that his claim, which is recognized in the agreement as a claim superior to the claims of plaintiffs, grew out of services claimed to have been rendered as such trustee, and that extra compensation has been allowed by the ordinary for services of like character, and that no part of such claim has ever been paid, is admissible as circumstances tending to throw light upon the bona fides of the executor, and this, too, although the appointment as trustee and the order allowing extra compensation may have been void.

4. In such a suit, evidence that some of the heirs at law of the testator did not assent to the agreement pleaded by the defendant in bar of the suit was admissible as bearing on the question of fraud.

5. In the trial of a case of the character above referred to, it was error to charge the law relating to the authority of attorneys at law to bind their clients in cases represented by them pending in a court of competent jurisdiction.

6. It was error, after charging as follows: "Neither an attorney nor other agent can represent two persons having conflicting interests, and an agreement made by a person having such double interest is not binding," to add: "This is not true with this issue in question; that is, where one acts in a representative capacity and the other in an individual capacity. This is not applicable where one acts for both parties in a representative capacity."

7. The judge having charged the jury the general principles in reference to fraud, if additional instructions on the subject would have been pertinent or appropriate, they should have been specially requested.

Argued June 13, — Decided July 25, 1898.

Petition for account and settlement. Before Judge Reese. Oglethorpe superior court. April term, 1897.

*Samuel H. Sibley,* for plaintiffs.

*John J. Strickland* and *William M. Howard,* for defendant.

SIMMONS, C. J.    1. It appears from the record that James M. Huff died in 1890, leaving a will. Specific legacies were bequeathed to four persons named. R. W. Huff was appointed executor, and qualified as such. The will was offered for probate, when it seems a caveat was filed by heirs of the testator. The will was, however, admitted to record, and an appeal was taken to the superior court. In that court the appeal was, by some means, converted into an equitable proceeding, and an alleged consent verdict and decree were had by which it was provided that the will be set aside; that the land be sold; that out of the proceeds thereof the attorneys be paid $400, the executor $2,550 as for services rendered the testator in his lifetime, as will be hereafter more fully stated, and that the legatee given $1,000 by the will be paid $333.33 and the others reduced in like proportion. These legatees subsequently filed their equitable petition for an accounting and settlement with Huff, the executor, setting out the specific legacies they were to receive under the will, and averring that they had never received the same. The executor, in his answer, set up the verdict and decree above mentioned, and alleged that the plaintiffs were pres-

ent and agreed to the terms of the settlement therein made, that the land had been sold under the decree but did not bring ·nough, after paying the attorneys and the executor, to pay the ligatees the full amount named in the decree; that two of the · ·atees had accepted and receipted for the amounts which he .id paid them, and that he had tendered to the other two the .·nounts coming to them and they had refused to receive them. To this plea the plaintiffs filed a demurrer on the ground that the plea was insufficient in law. The court overruled the demurrer, and plaintiffs excepted. It was contended here by counsel for the executor, that this verdict and decree were valid against the plaintiffs, and that by the decree all of their rights had been settled and they were bound thereby. It seems, however, that in the trial below the judge ruled that the verdict and decree were not valid and binding on the plaintiffs as a judgment, but he allowed the plea to stand as setting up an agreement or compromise between the parties litigant. Taking this view of it, he overruled the demurrer to the plea. The ruling of the judge that the decree was not binding as a judgment upon the plaintiffs was not excepted to by defendant, and we are therefore not called upon to decide its correctness. The only question necessary to decide on this particular part of the case is, whether the executor could plead the verdict and decree as an agreement assented to by the plaintiffs. We think that as the plea set out that these plaintiffs were present and, for a sufficient consideration, agreed to the terms of the verdict and decree, with a full knowledge of those terms, and that the agreement was carried out by a sale of the land and a division of the proceeds among those entitled thereto, it was a good plea as against the plaintiffs. It alleges that they were present, knew all the terms of the settlement, and agreed that the verdict and decree might be taken. While it is true the verdict was not signed by them nor by their counsel, yet if they had full knowledge of all the facts and agreed that it should be signed by the foreman of a jury and a decree entered by the judge, we do not see why they should not be bound thereby. As an agreement, it derived no force from the signature of the foreman of the jury or of the presiding judge; but if assented to it was good as an agreement with-

out signature. "If the terms of an agreement be put into writing and the writing be accepted by the parties as their agreement, though their assent be not evidenced by signature, nevertheless the agreement is a written agreement, and is subject to the rules of evidence affecting written agreements." Leake, Con. 184; Bish. Con. § 342, and cases cited. "A written instrument, although not signed by the parties, will, if orally assented to by them, constitute the agreement between them." Dutch *v.* Mead, 36 N. Y. Super. 427; Farmer *v.* Gregory, 78 Ky. 475; Bacon *v.* Daniels, 37 Ohio St. 279. The plea set up a valid agreement, and the judge did not err in overruling the demurrer thereto.

2. The trial proceeding, the plaintiffs, in an amendment to their petition, by way of reply to the answer and plea of defendant, denied all knowledge of the agreement above alluded to, denied being present at the time it was made, denied that they or any of them had authorized the executor or their counsel or any one else to enter into such an agreement on their behalf, and denied any ratification by them of the agreement. When, therefore, this verdict and decree was offered in evidence by the defendant, it was objected to because the defendant had not at that time proved or attempted to prove that the plaintiffs had assented to it. The court overruled the objection and admitted the verdict and decree in evidence. This ruling is made one of the grounds of the motion for new trial filed by the plaintiffs, after verdict against them, and overruled by the trial judge. As before remarked, this agreement was not signed by these plaintiffs nor by their counsel. It was signed by no one except a person signing the verdict as foreman of a jury and a judge signing the decree as trial judge. Treating it, not as a binding judgment, but simply as an agreement of the parties, the signatures it bore were of no effect. When, therefore, the plaintiffs, by their amendment, denied making or agreeing to it, it became necessary for the defendant to establish plaintiffs' assent to it before it could be put in evidence as their agreement. It would not have been necessary for the defendant, before introducing it, to prove conclusively that plaintiffs gave their assent to the agreement; but it was necessary for the defendant,

as a foundation for its introduction, to make at least a prima facie showing that they had assented. If the names of the plaintiffs had been signed to the paper and they had pleaded non est factum, it would have been necessary, before the paper could have been introduced in evidence, to make to the judge prima facie proof of the signing by the plaintiffs. There is much more reason, when the paper is not signed, to require the same character of proof. When one party seeks to bind another by an unsigned written instrument, it is incumbent upon him to show prima facie the assent of the other to its terms, before he can introduce it in evidence against him. The trial judge erred, in the present case, in overruling plaintiffs' objection to the introduction of the verdict and decree.

3. It seems that the executor, before the death of the testator, had been appointed by the judge of the superior court trustee of the testator. In his character as trustee, he went before the ordinary of the county and had the ordinary pass an order allowing him $300 per annum as extra compensation for his services in managing the estate of the testator. It appears that in his application to the ordinary he applied for additional compensation for future years as well as past, and that the order allowing extra compensation included both the future and the past. This extra compensation constituted a large portion of the amount allowed the executor in the alleged consent verdict and decree, and in the trial of the case it was set up as a claim preferred to that of the plaintiffs, the legatees. The latter contended that the claim was fraudulent. On this state of facts, the executor was allowed by the court, over objection of plaintiffs' counsel, to introduce in evidence his application to the ordinary and the ordinary's order allowing extra compensation. He was also allowed, over objection, to introduce the order of the judge of the superior court appointing him trustee of the testator. The objections to the latter order were, that it was "irrelevant and hurtful, and void for a want of jurisdiction"; as the deed, under which the testator derived the property, did not require the appointment of a trustee, there was no necessity for one; and, under the law, the trust was executed and the judge had no authority to appoint a trustee. The objection to

the introduction of the order of the ordinary was, that, the appointment of the trustee being void, the ordinary had no power to grant him extra compensation, and certainly had no power to grant extra compensation for services yet to be rendered. It is unnecessary, in the view we take of the case, to decide the legality of either of these orders, except to say that the ordinary certainly had no power to grant extra compensation for services to be rendered in the future. Be this as it may, if Huff was appointed trustee and bona fide performed the services of a trustee and in good faith applied to the ordinary for extra compensation, this evidence was competent and admissible as a circumstance tending to show that his claim was not fraudulent or trumped up after the testator's death for the purpose of obtaining a large proportion of the estate. If he acted in good faith and performed valuable services, both of these orders, though void, tend to show that he is claiming compensation for those services in good faith. We think that these judgments were not conclusive upon the plaintiffs, either as showing that the services were performed by Huff or as establishing the value of the services. They were admissible simply as circumstances tending to show Huff's good faith.

4. The plaintiffs alleged in their petition that the verdict and decree were obtained by Huff and others by fraud and collusion, and were therefore void. To their petition for an accounting and settlement, Huff replied that by reason of the verdict and decree he was discharged as executor, and that he had not claimed to be executor since the rendition of the decree. He also alleged, in an amendment to his answer, that the heirs at law had caveated the will, and that the verdict and decree were agreed to so as to avoid future litigation and to settle the entire matter. The plaintiffs, during the trial, offered testimony to show that many of the heirs at law of the testator did not know of or authorize the settlement or employ an attorney to represent them in the matter. The testimony was rejected by the court, and this is here assigned as error. On the issue made in regard to the bona fides of the agreement made by Huff and the others who formed the decree, we are inclined to think the testimony was admissible. Fraud is subtle and not easy to prove in many cases, and for this reason courts have been liberal in allow-

ing any fact to be proved which could throw light upon this ques-- tion. It is presumable that all the heirs joined in the caveat in this case, because it seems that the testator did not provide for any of them in the will but gave the whole property to others. If they were all caveators, it was necessary to have the assent of all of them in order to make the settlement binding, and their assent was as much necessary as the assent of the plaintiffs, the legatees. To quiet the whole matter, it was necessary that all interested in the propounding of the will enter into the agreement of settlement. If any of the heirs at law did not consent, they would not be bound unless they stood by and by their conduct ratified the agreement. While the main question in issue was whether the plaintiffs assented to the agreement, we think the fact that others, whose assent should have been obtained, did not do so, will throw some light upon the manner and the means used by the executor in obtaining the agreement. As he claims that all joined in the agreement, if it were shown that many of the heirs did not assent to it, this would throw light upon the question of the assent of the plaintiffs. The jury might, from his failure to obtain the assent of the heirs at law, infer that he also disregarded the assent of these poor and ignorant negroes, the plaintiffs.

5. The judge having treated the verdict and decree as not binding or valid as a judgment, and it being then relied upon simply as an agreement of the parties which required the individual assent of each before it would be binding, it was error to charge upon the power and authority of attorneys at law to bind their clients in cases represented by them, pending in a court of competent jurisdiction. If the theory was correct that the court had no jurisdiction of the case, then the agreement was not a court proceeding, and the attorneys would have no right as attorneys at law to bind their clients by signing such an agreement without the authority to do so. The whole theory of the defense was that these plaintiffs were present in court and themselves assented to the agreement. Where the attorney has authority to represent his client and make settlements for him in a case pending in a court which has jurisdiction of the case, we think that the law will not authorize him to go outside of the court and to make an agreement for his client without the

knowledge or consent of the latter.  Of course, if the client authorized him to make such a settlement, the case would be different.

6. One of the grounds of the motion for new trial complains that the judge erred in giving the following charge: "Neither an attorney nor other agent can represent two persons having conflicting interests, and an agreement made by a person having such double interest is not binding.  This is not true with this issue in question; that is, where one acts in a representative capacity and the other in an individual capacity.  This is not applicable where one acts for both parties in a representative capacity."  There is no complaint made of the first sentence of this charge, but the error complained of is in the latter portion of it.  This latter portion is to us unintelligible.  We apprehend that there must have been a mistake in copying this part of the charge; for we can not conceive that our learned brother below, who is generally so clear in his statements of his views of the law, could have made such a meaningless addendum to a correct principle of law.  Inasmuch, however, as he has certified that the grounds of the motion are true, we must deal with this charge as though he had so given it, and must hold that it was erroneous.

7. The judge charged the jury on the subject of fraud generally, and no exception is taken to the correctness of this portion of his charge.  Complaint is made that he did not charge upon the subject of constructive fraud, but it appears that he was not requested to do so.  In former decisions this court has held repeatedly that where a judge correctly charges the general principles of law which control the case and no proper request is made for more specific instruction to the jury, the verdict will not be set aside because of a failure to give additional and specific instructions upon a subject already covered by the more general charge given.  Here the judge charged the jury as to the general principles of the law relating to fraud, and, in the absence of any request to charge, it was not error to fail to instruct the jury in reference to constructive fraud.

*Judgment reversed.  All the Justices concurring, except Lewis, J., disqualified.*